UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
BRYAN FABER,                                          :
                                                      :
                              Plaintiff,              :
                                                      :
        - against -                                   :          **OPINION AND ORDER**
                                                      :          10-CV-01812 (ER)
MONTICELLO CENTRAL SCHOOL DISTRICT,                   :
THE MONTICELLO BOARD OF EDUCATION,                    :
JON AND/OR JANE DOES "1"-"5," persons employed by     :
the Monticello Board of Education, JEANINE NIELSEN,   :
the acting summer school Assistant Principal and a person :
employed by the Monticello Central School District, and :
DEB FASCE, the Student Services Liaison and a person  :
employed by the Monticello Central School District,   :
                                                      :
                              Defendants.             :
------------------------------------------------------------------------x

Ramos, D.J.:

        Plaintiff Bryan Faber ("Plaintiff" or "Faber") brings this civil rights action pursuant to 42

U.S.C. § 1983 against Jeanine Nielsen ("Nielsen"), Deb Fasce ("Fasce"), the Monticello Central

School District (the "School District" or "MCSD"), and the Monticello Board of Education (the

"Board of Education" or "the Board") (collectively, the "Defendants"),[1] alleging violations of

Plaintiff's First, Fourth, Fifth, Eighth and Fourteenth Amendment rights, as well as state law

claims for false imprisonment; negligent hiring, retention and supervision; negligence; assault

and battery; and intentional infliction of emotional distress.  Complaint ("Compl.") (Doc. 1.)  On

March 8, 2010, Defendants removed this case from New York State Supreme Court, Sullivan

---

[1] Plaintiff has also asserted claims against John and Jane Doe defendants who are identified in the Complaint as
employees of the School District and the Board.  However, Plaintiff has not indicated at any point during the course
of these proceedings that he intends to pursue his claims against the Does, nor does he address those claims in his
opposition to Defendants' motion for complete summary judgment. The Court thus concludes that Plaintiff has
abandoned his claims against the Doe defendants. *Southerland v. City of NY*, 680 F.3d 127, 138 n.12 (2d Cir. 2012),
*amending and superseding* 667 F.3d 87 (2d Cir. 2012), *reh'g en banc denied* 681 F.3d 122 (2d Cir. 2012); *see also
Brandon v. City of New York*, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) (collecting cases where plaintiff's claims
were dismissed as abandoned based on failure to address them in opposition to defendant's motion).  Therefore,
Plaintiff's claims against the Doe defendants are DISMISSED.

County, to this Court pursuant to 28 U.S.C. § 1441(a).[2]  Presently before the Court is Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56.  (Doc. 31.)

For the reasons discussed below, Defendants' motion for summary judgment is GRANTED.

## I.   Statement of Facts

The following facts are undisputed except where otherwise noted.

In the summer of 2008, Plaintiff was enrolled in the summer program at Monticello High School.  Declaration of Deborah Fasce ("Fasce Decl.") ¶ 5.  On the morning of July 8, 2008, while Plaintiff was in the school library talking to his friends, the school librarian, Ms. Greene, asked him to stop talking and yelling.  Defs.' 56.1 Stmt. ¶ 7.[3]  Faber refused to stop talking as directed because, in his words, he was "bored."  *Id.* ¶ 8.  Ms. Greene then called for a safety officer to escort Plaintiff from the library to Defendant Nielsen's office, who was the acting summer school assistant principal at the time.  Declaration of Gregg T. Johnson ("Johnson Decl.") Ex. C (Faber Depo. Tr.) at 141-42.  Plaintiff waited in a seating area until he moved into Nielsen's office.  *Id.* at 142.  Two security guards were present in the office with Faber; one stood against the wall to the left of Nielsen's desk and the other stood in the door frame of the office.  Declaration of Jennielena Rubino ("Rubino Decl.") Ex. 1 (Nielsen Depo. Tr.) at 10.  According to Plaintiff, Nielsen then informed him that somebody had complained about him being "high" and that he wasn't acting the way he normally acts.  Johnson Decl. Ex. F (Faber 50h Tr.) at 30-31.  Nielsen testified, on the other hand, that when she first saw Faber on July 8,

---

[2] Defendants cite 28 U.S.C. § 1441(b) in their Notice of Removal, however, the Court assumes Defendants intended to cite § 1441(a), as they argue elsewhere in the Notice that the Court has original jurisdiction pursuant to 28 U.S.C. § 1331.

[3] Citations to "Defs.' 56.1 Stmt." refer to Defendants' Local Civil Rule 56.1 Statement, Doc. 40.

2008, he appeared "fine" and was "cooperative."  Rubino Decl. Ex. 1 (Nielsen Depo. Tr.) at 18. She further testified that Faber did not display any of the typical characteristics of an individual who is "high," that nobody told her that he displayed those characteristics, and that Ms. Greene did not inform her that he looked high.  *Id.* at 26-27.

Plaintiff testified that he responded to Nielsen by stating that he was not high and that he was on medication, which he had taken that morning and which made him look "high."  Johnson Decl. Ex. F (Faber 50h Tr.) at 30-31; Rubino Decl. Ex. 2 (Faber Depo. Tr.) at 21-22, 25, 47; Defs.' 56.1 Stmt. ¶ 13.  Plaintiff further testified that "[a] lot of people" have told him that his medication makes him look high, such as his mother, grandmother, and the school secretary, and that he has been accused of being high at school at times he has taken his medication.  Rubino Decl. Ex. 2 (Faber Depo. Tr.) at 25.  Moreover, Plaintiff testified that his medication made him look "tired" and caused him to "act[] happy and laugh[] and [be] just crazy," and generally made him act "differently."  *Id.* at 26.  According to Plaintiff, Nielson then asked him to empty his pockets.  *Id.* at 142.  Plaintiff complied with Nielson's request because he "was under the assumption [he] wasn't allowed to" refuse and "had nothing to hide."  *Id.* at 144.  Faber testified that he emptied his pants pockets only and that the items he removed from them included a pack of cigarettes, money, and his wallet.  *Id.*  Plaintiff assumed that Nielsen was looking for "weed" when she asked him to empty his pockets.  *Id.* at 146.  Nielsen, on the other hand, claims that she did not ask Plaintiff to empty his pockets and that he never emptied his pockets while he was in her office.[4]  Declaration of Jeanine Nielsen ("Nielsen Decl.") ¶ 10; Rubino Decl. Ex. 1 (Nielsen Depo. Tr.) at 24.  It is undisputed that neither Nielsen nor Fasce touched Plaintiff at any time during the July 8, 2008 incident and that he did not suffer any physical injuries as a result of the

---

[4] Similarly, Fasce states that she did not witness a search of Plaintiff and did not see him emptying his pockets while in Nielsen's office.  Fasce Decl. ¶ 10.

alleged search.  Defs.' 56.1 Stmt. ¶¶ 24-26, 28.

Fasce, the Student Services Liaison, was present in Nielsen's office at the time Plaintiff was asked to empty his pockets.  Rubino Decl. Ex. 2 (Faber Depo. Tr.) at 61.  After they left Nielsen's office, Plaintiff told Fasce that he wanted to go back to regular school.  *Id.* at 60. Plaintiff claims that Fasce responded:  "Oh, you have been suspended for two years.  You don't have the skills to go back and you are not going to succeed."  *Id.*  Plaintiff responded by saying, "Whatever."  *Id.*  Fasce claims, however, that she made a comment to Faber "about getting his act together so he could re-enter the day program which he had worked so hard to return to." Fasce Decl. ¶ 8.  According to Fasce, she "would never say anything derogatory to [her] students" and did not tell Faber that he did not have the skills to succeed in school.  *Id.*

After leaving Nielsen's office, Plaintiff returned to the library and subsequently attended the rest of his classes that day without incident.  Defs.' 56.1 Stmt. ¶¶ 29-30.

## II.     Legal Standard on Motion for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky,* 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might affect the outcome of the litigation under the governing law.  *Id.*  The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Saenger v. Montefiore Med. Ctr.*, 706 F.

Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'"  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.,* 368 F.3d 123, 126 (2d Cir. 2004)).  However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts."  *McClellan v. Smith,* 439 F.3d 137, 144 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)).  To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."  *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57 (1986)).

## III.    Plaintiff's Section 1983 Claims[5]

Plaintiff alleges that Defendants violated his Fourth Amendment rights by unlawfully searching him without any reasonable suspicion that he was concealing contraband in his pockets.  Pl.'s Mem. L. Opp. 7-10.  Defendants, on the other hand, argue that the July 8, 2008

---

[5] Although Plaintiff alleges multiple constitutional violations in the Complaint, including violations of his First, Fourth, Fifth, Eighth and Fourteenth Amendment rights, Defendants argue that the Complaint contains no facts to support any constitutional claim other than one pursuant to the Fourth and Fourteenth Amendments.  Defs.' Mem. L. 5 n.4.  In his opposition papers, Plaintiff does not contest Defendants' argument and addresses only his Fourth Amendment claim, as applied to Defendants by the Fourteenth Amendment, making no reference to the other constitutional claims alleged in the Complaint.  The Court thus concludes that Plaintiff has abandoned his First, Fifth and Eighth Amendment claims.  *See Southerland*, 680 F.3d at 138 n.12; *Brandon*, 705 F. Supp. 2d at 268; *see also supra* n.1.  Accordingly, Plaintiff's First, Fifth and Eighth Amendment claims are DISMISSED.

"search" of Plaintiff was reasonable, was not excessively intrusive, and was consented to by Plaintiff.  Defs.' Mem. L. 5-7.  Moreover, Defendants argue that Plaintiff's claim against Fasce must be dismissed as it is undisputed that she was not involved in the search at issue; that the individual Defendants are entitled to qualified immunity; and that Plaintiff's claim against the School District and the Board of Education must be dismissed because he cannot establish that the individual Defendants were acting pursuant to any municipal policy, practice or custom.

### a.  Plaintiff's § 1983 Claim Against Defendant Fasce Must be Dismissed

By Plaintiff's own admission, Fasce had no involvement in the July 8, 2008 search of Plaintiff's pants pockets.  During his deposition, Plaintiff unequivocally testified that the request to empty his pockets came exclusively from Nielsen.  Rubino Decl. Ex. 2 (Faber Depo. Tr.) at 143.  Indeed, Plaintiff admits in his opposition papers that Nielsen "conducted the search" and does not contest Defendants' argument that Fasce played no role in the alleged search.  Pl.'s Mem. L. Opp. 9.  Accordingly, Plaintiff's § 1983 claim against Fasce is DISMISSED.

### b.  Reasonable Suspicion Existed to Conduct the Minimally Invasive Search of Plaintiff's Pockets

Although the Fourth Amendment "applies to searches conducted by school authorities," the Supreme Court has held that "the school setting requires some easing of the restrictions to which searches by public authorities are ordinarily subject."  *New Jersey v. T.L.O.*, 469 U.S. 325, 337, 340 (1985).  In determining the reasonableness of a search conducted in a school setting, courts apply a twofold inquiry:  first, "'whether the . . . action was justified at its inception'"; second, "whether the search as actually conducted 'was reasonably related in scope to the circumstances which justified the interference in the first place.'"  *Id.* at 341 (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968)).  The Court has held that a search of a student will generally be

"justified at its inception" when there are "reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school," and that such a search will be permissible in scope when "the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *Id.* at 341-42.  Thus, under *T.L.O.*, a search will ordinarily be justified at its inception if it is supported by reasonable suspicion.  *See Phaneuf v. Fraikin*, 448 F.3d 591, 596 (2d Cir. 2006) ("*T.L.O.* held that reasonable suspicion is the governing standard ....")  The Supreme Court has described this reasonable suspicion standard as requiring "a moderate chance of finding evidence of wrongdoing."  *Safford Unified Sch. Dist. v. Redding*, 557 U.S. 364, 371 (2009).  In determining whether reasonable suspicion exists, courts must review "the totality of the circumstances, looking first at those that might have created a reasonable suspicion that such a search was justified at its inception" and must base that review "on only those facts known to the school officials *prior* to the search."  *Phaneuf*, 448 F.3d at 597 (emphasis in original).  Moreover, although reasonable suspicion is the governing standard, "'as the intrusiveness of the search of a student intensifies, so too does the standard of Fourth Amendment reasonableness.'"  *Id.* (quoting *Cornfield v. Consol. High Sch. Dist.*, 991 F.2d 1316, 1321 (7th Cir. 1993)).

Here, Defendants deny that Plaintiff was ever instructed to empty his pockets.  However, even accepting Plaintiff's version of the events as true, as the Court is required to do, the Court finds that a reasonable jury could not find that Defendants violated Plaintiff's Fourth Amendment rights.  Plaintiff admits that he was escorted to Nielsen's office due to his insubordinate behavior and that while in Nielsen's office, she informed him that somebody had told her that he was high and that he was acting differently than the way he normally acts.

7

Plaintiff further testified that he had taken medication that morning which caused him to look high, that he had been accused of being high at school previously while on the medication, and that the medication caused him to look tired, to laugh, and to act "crazy."[6]  Moreover, the search at issue here was only minimally invasive, as Plaintiff was merely directed to empty his pockets and was never touched or otherwise contacted by Nielsen, and therefore a high level of suspicion was not required.[7]  Accordingly, considering the facts as presented by Plaintiff, the Court finds that the minimally invasive search of Plaintiff's pockets was supported by a reasonable suspicion that Plaintiff was high and thus had drugs in his possession.[8]  *See Binder v. Cold Spring Harbor Cent. Sch. Dist.*, No. 09 Civ. 4181 (SJF) (ARL), 2010 WL 3257708, at *6 (E.D.N.Y. July 19, 2010) (Report & Recommendation) (holding that reasonable suspicion existed to search plaintiff's backpack where assistant principal was informed by another teacher that plaintiff smelled of marijuana), *adopted* 2010 WL 3257849 (E.D.N.Y. Aug. 13, 2010); *Mac Ineirghe v. Bd. of Educ. of E. Islip Union Free Sch. Dist.*, No. 05 Civ. 4324 (JFB) (AKT), 2007 WL

---

[6] In their Local Rule 56.1 Statement of Material Facts, Defendants include Plaintiff's past disciplinary problems at MCSD prior to the July 8, 2008 incident.  *See* Defs.' 56.1 Stmt. ¶¶ 5-6.  However, because none of the prior disciplinary problems cited by Defendants involve Plaintiff's possession or use of marijuana or any other drug, the Court finds that these incidents are irrelevant to the issue of the reasonableness of the search at issue in this case.  *See Phaneuf*, 448 F.3d at 599 ("Disciplinary problems by themselves are not necessarily indicia of drug abuse, because most school discipline problems do not involve drug abuse, although many of the most serious do. . . . In this case, we are unconvinced that [Plaintiff's] past discipline, none of which related to drug use, adds much of significance in determining the reasonableness of the initiation of a highly intrusive search, whose only purpose was to find drugs.").

[7] Although Defendants argue that Plaintiff consented to the search, Defs.' Mem. L. 7, Plaintiff testified that he was under the assumption that he was not permitted to refuse Defendant Nielsen's request.

[8] Plaintiff argues in his opposition papers that he was never told why he was being searched and, in fact, that Defendants deny that the search even occurred.  Pl.'s Mem. L. Opp. 9.  Accordingly, Plaintiff argues that his admission that his eyes may have been red as a result of his medication and that the school official was looking for marijuana should bear no weight in the analysis.  *Id.*  However, on a motion for summary judgment, the Court is obligated to accept the non-moving party's version of the facts as true.  Accordingly, based on Plaintiff's own version of events, the Court finds that a reasonable fact-finder could not decide in his favor.  Thus, that Defendants deny that a search ever occurred does not change the outcome, as the Court is required to credit the evidence submitted by Plaintiff (here, Plaintiff's *own* testimony), which establishes that the alleged search was conducted based upon a reasonable suspicion that Plaintiff had drugs in his possession.

2445152, at *10 (E.D.N.Y. Aug. 22, 2007) (holding that reasonable suspicion to conduct a

minimally invasive search existed where plaintiff was found in the school parking lot in violation

of school rules, appeared nervous, and was wiping his nose and rubbing his eyes); *see also*

*Bridgman v. New Trier High Sch. Dist. No. 203*, 128 F.3d 1146, 1147, 1150 (7th Cir. 1997)

(holding that reasonable suspicion to conduct a minimally invasive search existed where plaintiff

had bloodshot eyes and dilated pupils and was giggling and acting in an unruly fashion).

      Turning to the question of whether the search was reasonable in scope and not

excessively intrusive, the Court concludes that, due to its minimally invasive nature, the search

of Plaintiff's pockets was reasonably related to its objective of determining whether Plaintiff had

drugs in his possession.  Moreover, it is undisputed that Nielsen did not touch Plaintiff at any

time during the July 8, 2008 incident and that the only "emptying" Plaintiff did was of his pants

pockets.  Accordingly, the Court finds that the search was not excessively intrusive.  Indeed,

courts have upheld far more intrusive searches, including strip searches, based upon observations

by school officials similar to those at issue here.  In *Cornfield v. Consol. High Sch. Dist.*, 991

F.2d 1316 (7th Cir. 1993), for example, the plaintiff, who had a history of disciplinary problems,

had been caught outside the school building in violation of school rules, and a bulge was

observed in his pants.  *Id.* at 1319.  The following day, believing that the plaintiff was

"crotching" drugs, the defendants strip-searched him without the consent of his parents.  *Id.*

Recognizing that "[w]hat may constitute reasonable suspicion for a search of a locker or even a

pocket or pocketbook may fall well short of reasonableness for a nude search," the court held

that the strip-search at issue was reasonable.  *Id.* at 1321-23.  Thus, the limited and noninvasive

search of Plaintiff's pockets in the instant action does not rise to the level of a Fourth

Amendment violation.

**c.  Qualified Immunity**

The individual Defendants argue that, even assuming *arguendo* that the actions giving

rise to Plaintiff's Complaint did violate the Fourth Amendment, they are entitled to the defense of

qualified immunity.  For the reasons set forth below, the Court agrees.

**i.  Legal Standard**

"A government official sued in his individual capacity is entitled to qualified immunity

(1) if the conduct attributed to him was not prohibited by federal law; or (2) where that conduct

was so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was

not clearly established at the time it occurred; or (3) if the defendant's action was objectively

legally reasonable in light of the legal rules that were clearly established at the time it was

taken."  *Manganiello v. City of New York*, 612 F.3d 149, 164 (2d Cir. 2010) (citations, brackets,

ellipses, and quotations omitted).  The Second Circuit recently explained that "[q]ualified

immunity thus affords government officials breathing room to make reasonable—even if

sometimes mistaken—decisions, and protects all but the plainly incompetent or those who

knowingly violate the law from liability for damages."  *DiStiso v. Cook*, 691 F.3d 226, 240 (2d

Cir. 2012) (citations and quotations omitted).  Therefore, "[w]hether qualified immunity applies

in a particular case generally turns on the objective legal reasonableness of the challenged action,

assessed in light of the legal rules that were clearly established at the time it was taken."  *Id.*

(citations and quotations omitted).

The Second Circuit has held that courts should cloak defendants with qualified immunity

at the summary judgment stage "only 'if the court finds that the asserted rights were not clearly

established, or if the evidence is such that, even when it is viewed in the light most favorable to

the plaintiff[] and with all permissible inferences drawn in [his] favor, no rational jury could fail

10

to conclude that it was objectively reasonable for the defendants to believe that they were acting in a fashion that did not violate a clearly established right.'"  *Vassallo v. Lando*, 591 F. Supp. 2d 172, 198-99 (E.D.N.Y. 2008) (quoting *Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003)).

### ii.  Application

Although the level of suspicion required to conduct a search of a student may vary depending upon the circumstances and extent of the search, it is clear that "young people do not 'shed their constitutional rights' at the schoolhouse door."  *Goss v. Lopez*, 419 U.S. 565, 574 (1975).  In determining the constitutionality of a particular school search, it is clearly established that courts should apply the reasonableness standard.  *See Phaneuf*, 448 F.3d at 595 (noting that, in *T.L.O.*, "the Supreme Court applied the Fourth Amendment 'reasonableness' standard to a search of a student by school administrators").  In other words, "[a]lthough the meaning of 'unreasonable searches and seizures' is different in the school context than elsewhere, it is nonetheless evident that there must be some basis for initiating a search.  A reasonable person could not believe otherwise."  *Vassallo*, 591 F. Supp. 2d at 199-200 (quoting *Klump v. Nazareth Area Sch. Dist.*, 425 F. Supp. 2d 622, 641 (E.D. Pa. 2006)).

Accordingly, because the Court concludes that at the time of the July 8, 2008 incident, it was clearly established that searches of students must be conducted under the "reasonableness" standard of the Fourth Amendment, *see Phaneuf*, 448 F.3d at 595, the Court must determine whether it was objectively reasonable for Nielsen to believe that her conduct comported with the "reasonable suspicion" standard governing searches of students.  The Court has already found that the search of Plaintiff's pants pockets was constitutional based on the facts as relayed by Plaintiff, however, even if the search had violated the Fourth Amendment, Nielsen would still be entitled to qualified immunity.  In light of the facts as presented by Plaintiff, it was objectively

reasonable for Nielsen to conclude that her conduct in asking Plaintiff to empty his pockets was supported by reasonable suspicion and satisfied the *T.L.O.* standard. *See Zieper v. Metzinger*, 474 F.3d 60, 71 (2d Cir. 2007) ("[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'") (citation omitted).

### d.   Summary Judgment is Warranted on Plaintiff's § 1983 Claim Against the School District and the Board

A municipality cannot be held liable under § 1983 for the acts of its employees solely on a theory of *respondent superior*, and a § 1983 claim against a municipality can only be sustained if the action that is alleged to be unconstitutional was the result of an official policy, custom or practice. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690-94 (1978). Thus, a plaintiff must demonstrate that such a municipal policy or custom is responsible for his or her injury. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997), *reh'g denied*, 520 U.S. 1283 (1997); *see also Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) ("A municipality or other local government may be liable under [§ 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") (quoting *Monell*, 436 U.S. at 692).

Here, because the Court finds as a matter of law that Plaintiff's Fourth Amendment rights were not violated, no *Monell* claim can lie against the School District or the Board pursuant to § 1983. *See Vassallo*, 591 F. Supp. 2d at 202 (citing *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct.")); *see also Vippolis v. Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("A plaintiff who

seeks to hold a municipality liable in damages under Section 1983 must prove that the municipality was, in the language of the statute, the 'person who . . . subject[ed], or cause[d] [him] to be subjected,' to the deprivation of his constitutional rights.")).

## IV.     State Law Claims

Where, as here, all federal law claims are eliminated before trial, the "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction over any remaining state law claims. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  Having dismissed all federal claims asserted in the Complaint, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.  28 U.S.C. § 1367(c)(3).  Therefore, Plaintiff's claims for false imprisonment (Count I); negligent hiring, retention and supervision (Count II); negligence (Count III); assault and battery (Count IV); and intentional infliction of emotional distress (Count V) are DISMISSED without prejudice.

## V.     Conclusion

For the reasons set forth above, Defendants' motion for summary judgment is GRANTED.  The Clerk of the Court is respectfully directed to terminate the motion and close this case.  Doc. 31.

It is SO ORDERED.

Dated:     June 6, 2013
           White Plains, New York

Edgardo Ramos, U.S.D.J.

13